UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES CULPEPPER and FRANCHELLE ADAMS,

       Plaintiffs,

v.

DETROIT POLICE OFFICER HAROLD ROCHON, ET AL.,

       Defendants.
_____/

Case No. 15-12386

Honorable Nancy G. Edmunds

### OPINION AND ORDER GRANTING IN PART DEFENDANTS' MOTION FOR PARTIAL DISMISSAL AND PARTIAL SUMMARY JUDGMENT [7]

Plaintiffs James Culpepper and Franchelle Adams filed this civil rights lawsuit against seven City of Detroit police officers. According to the amended complaint, Plaintiffs were severely beaten after several of the officers stormed their home without a valid warrant or probable cause. Plaintiffs have asserted various constitutional claims stemming from the allegedly unlawful search and use of excessive force.[1]

Currently before the Court is Defendants' motion for partial summary judgment and dismissal pursuant to Federal Rules of Civil Procedure 56 and 12(b)(6).[2] (Dkt. 7, 9).

---

[1] Plaintiffs' have also asserted one count of gross negligence under Michigan state law, however, the Court previously dismissed this claim without prejudice to avoid jury confusion. (Dkt. 4). The Court thus declines to address Defendants' argument that this claim should be dismissed on the merits.

[2] Of note to this motion, when a movant submits matters outside of the pleadings in support of a Rule 12(b)(6) motion, Federal Rule of Civil Procedure 12(d) requires a court to either convert the motion into a Rule 56 motion for summary judgment or to exclude the extraneous evidence from its consideration of the motion.

According to Defendants, Culpepper's Fourth and Fifth Amendment claims are barred under the *Heck* doctrine.[3] Additionally, Defendants maintain that Officer Harold Rochon was not personally involved in the conduct giving rise to Plaintiffs' complaint and is therefore entitled to summary judgment. For the reasons stated more fully below, the Court GRANTS IN P Defendants' motion.

I.  **Factual Background**

On June 7, 2012, a team of Detroit Police Officers from the "narcotics raid crew" executed a search warrant at 6391 Globe Street in Detroit, Michigan. (Defs' Mot. Ex. A, Search Warrant and Affidavit). According to a report authored by Officer Rodger Johnson, after announcing their presence and purpose, the officers forcibly entered Plaintiffs' home through the front door. (*Id.* at Ex. F, Use of Force Report.). "Immediately after kicking the door in, a gunshot round was fired in [the officers' direction] by Mr. Culpepper. The bullet did not [hit anyone], but lodged in the wall. Mr. Culpepper was standing on a stairway landing when he fired the shot, and quickly ran upstairs before gun fire could be returned." (*Id.*). Culpepper admits that he opened fire on the officers, but maintains that he did so in self-defense "after repeated inquires as to who was in the house were ignored . . . ." (Amend. Compl. ¶ 6). Following a tense verbal exchange, Culpepper was detained "with no resistance and no force used." (Ex. F.). Shortly after Culpepper's submission, "Franchele Adams, who had been sleeping in the home and was completely unclothed, was arrested . . . and forced to stand nude in full view of the Defendants." (Amend. Compl. ¶ 8).

---

[3] Defendants' motion is limited to Culpepper's claims only.

The series of events following Plaintiffs' arrest forms the primary basis of this dispute. According to the complaint, despite being fully subdued and posing no threat to the officers, Plaintiffs were "struck, kneed and punched numerous times" while laying defenseless on the floor. (*Id.* ¶ 8-9). At some point after the home was secured, Defendant Harold Rochon, a Detroit Police Department Supervisor, arrived and "assumed control and took over the situation." (Plfs'. Resp. Ex. I, Adams Aff. ¶ 5). The search of the residence uncovered marijuana and two pistols. (Defs' Mot. Ex. F, Use of Force Report). Later that evening, Culpepper signed a written confession admitting, among other things, that (1) he was a convicted felon, (2) the guns and drugs belonged to him, and (3) he was "not injured in anyway" during the arrest. (*Id.* at Ex. B, Culpepper Confession). According to Defendants, Adams likewise signed a written confession, but it was not included as part of the record here.

On June 8, 2012, Culpepper was charged with ten counts of criminal conduct ranging from simple possession to felony assault with intent to murder. (Plfs.' Resp. Ex. 4, Register of Actions). Several months later, Culpepper pled guilty to two counts of felony firearm possession and was sentenced to two years in prison. All remaining charges were dismissed.[4]

On June 5, 2015, Plaintiffs filed a two-count complaint against the officers pursuant to 42 U.S.C. § 1983 and Michigan state law. With respect to their § 1983 claims, Plaintiffs' primary cause of action arises under the Fourth Amendment. More specifically, Plaintiffs' challenge the constitutionality of the search and seizure and use of force leading to their

---

[4] Defendants maintain that Adams was issued a misdemeanor citation, but the record is silent with respect to the specific charge(s) and disposition.

3

arrest. In addition to the Fourth Amendment violations, Plaintiffs assert a series of due process claims related to the officers' post-arrest conduct.

## II. Standard of Review

Defendants' motion requires the Court to apply two competing standards of review. First, Defendants maintain that many of Culpepper's constitutional claims are barred under the *Heck* doctrine. *See Heck v. Humphrey*, 512 U.S. 477 (1994). This argument tests the legal sufficiency of Plaintiffs' complaint and is thus analyzed under Rule 12(b)(6). Next, Defendants assert that Officer Harold Rochon must be dismissed where, as here, Plaintiffs have failed to establish that he was actively involved in the illicit conduct giving rise to the complaint. This issue necessarily requires the Court to consider matters outside of the pleadings and is therefore "treated as [a motion] for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The following framework guides the Court's review.

### A. Rule 12(b)(6): Motion to Dismiss

The Sixth Circuit recently noted that under the United States Supreme Court's heightened pleading standard laid out in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), "a complaint only survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Estate of Barney v. PNC Bank, Nat'l Ass'n*, 714 F.3d 920, 924–25 (6th Cir. 2013) (internal quotation marks and citations omitted). The court in *Estate of Barney* goes on to state that under *Iqbal*, "[a] claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotation marks and citations omitted). Furthermore,

"[w]hile the plausibility standard is not akin to a 'probability requirement,' the plausibility standard does ask for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. Finally, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show [n]'—'that the pleader is entitled to relief.' " *Id.* at 679, 129 S.Ct. 1937 (quoting Fed.R.Civ.P. 8(a)(2)). If the plaintiffs do "not nudge[ ] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955.

### B. Rule 56: Summary Judgment

It is well established that summary judgment under Federal Rule of Civil Procedure 56 is proper when the movant "shows that there is no genuine dispute as to any material fact, and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 326–27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)) (quotations omitted). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* Furthermore, the "substantive law will identify which facts are material, and summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When considering the material facts on the record, a court must bear in mind that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

5

### III.    Analysis

#### A.  *Heck* Doctrine

Count I of the amended complaint can be divided into three distinct periods of time: the authorization and execution of the search warrant, Plaintiffs' arrest, and the confession/investigation leading to criminal charges. Defendants' first argument takes aim at the § 1983 claims related to the search and post-arrest period. More specifically, Defendants maintain that these claims--premised under the Fourth and Fifth Amendments respectively--amount "to an impermissible collateral attack on the validity of [Culpepper's] conviction . . . ." and are thus barred under the *Heck* doctrine.

The so-called *Heck* doctrine emanates from the Supreme Court's holding in *Heck v. Humphrey*, 512 U.S. 477 (1994). There, the Court held that a plaintiff was prohibited from bringing a § 1983 action if a favorable judgment "would necessarily imply the invalidity of his conviction or sentence; if [so], the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." 512 U.S. at 487.  Generally speaking, "Fourth Amendment claims arising out of searches occurring prior to [a plaintiff's] guilty plea and incarceration [are] precluded by [*Heck*] on the grounds that a civil suit holding that these searches were improper would undermine the basis of [the plaintiff's] guilty plea and sentence." *Jacob v. Township of W. Bloomfield*, 531 F.3d 385, 388 (6th Cir. 2008); *see Macon v. Hopkins*, No. 11-1191, 2012 WL 112298, at *3 (W.D. Mich. Jan. 12, 2012) (Quist, J) (*citing Jacob* and holding that where an allegedly illegal search produced evidence leading to a guilty plea, the plaintiff was barred from bringing a § 1983 claim challenging the search until the conviction was overturned.). To determine whether a "favorable Fourth Amendment judgment would impugn the validity of

an outstanding conviction," the courts are instructed to consider whether any legal doctrine--i.e. the independent source rule, inevitable discovery, etc--"could save the evidence from exclusion." *Harper v. Jackson*, 293 F. App'x 389, 391-92 (6th Cir. 2008).

Here, there is no question that Culpepper's wrongful search and seizure claim, if successful, would imply the invalidity of his conviction. Indeed, the search uncovered direct evidence of drugs and illegal firearms- the very basis of the criminal complaint. Without this evidence, there is little doubt that Culpepper would not have pled guilty to the firearms charges in exchange for a dismissal of the remaining eight counts. While Plaintiffs briefly mention the independent source rule, they fail to argue how it applies to the facts of this case; nor could they- all of the illegal contraband was found inside Plaintiffs' home and there is nothing in the record to suggest that the evidence would have been discovered "through sources 'wholly independent of [the alleged] constitutional violation.' " *United States v. Jenkins*, 396 F.3d 751, 757 (6th Cir. 2005) (quotations omitted) (explaining the application of the independent source doctrine).[5]

This reasoning applies with equal force to Culpepper's claim that Defendants violated his Fifth Amendment right "not to incriminate [himself] and to be forcibly threatened and intimidated into signing a false confession . . . ." (Amend Compl. ¶ 13(c)). A finding that Culpepper's confession was "impermissibly coerced, as would be necessary to establish

---

[5] Defendants fail to specifically address the application of the *Heck* doctrine to the "knock-and-announce" portion of Culpepper's Fourth Amendment claim. In *Hudson v. Michigan*, the Supreme Court held that a violation of the "knock-and announce" rule, without more, does not require the suppression of evidence found in a search. 547 U.S. 586, 593 (2006). In other words, a favorable judgment on this aspect of Culpepper's claim would not necessarily imply the invalidity of his conviction. Therefore, the Court declines, at this juncture, to dismiss the knock-and-announce violation.

damages in a § 1983 action, would correspondingly demonstrate the invalidity of the . . . adjudication and associated sentence . . . in contravention of *Heck*." *Morris v. City of Detroit*, 211 F. App'x 409, 410 (6th Cir. 2006) (citations omitted). For that reason, the Sixth Circuit has been clear that a "challenge to a criminal investigation that led to a conviction necessarily challenges the validity of the conviction, and therefore falls within the *Heck* framework." *Id.* at 411 (holding that the plaintiff's § 1983 claim "alleging that his confession was the result of improper police coercion", was barred under the *Heck* doctrine.) Accordingly, the Court finds that Culpepper's' § 1983 claims challenging the validity of the search and the officers' post-arrest conduct fall squarely within the *Heck* doctrine. Therefore, the Court must, and does, dismiss those portions of the amended complaint.

### B. Officer Harold Rochon

Culpepper's sole remaining claim under Count I asserts that Defendants "violated [his] Fourth Amendment right to be free from an unreasonable seizure of their persons through the use of unnecessary, excessive and gratuitous force . . . ." (Amend Compl. ¶13(b)). According to Defendants, Officer Harold Rochon was not present for the execution of the search warrant or Plaintiffs' arrest and is thus entitled to summary judgment. While Plaintiffs appear to agree that Officer Rochon was not personally involved in the conduct giving rise to their excessive force claim, they maintain that "Defendants are equally liable as they all acted jointly and in concert." (Defs.' Br. 13).

"[D]amage claims against governmental officials alleged to arise from violations of constitutional rights cannot be founded upon conclusory, vague or general allegations, . . . ." *Terrance v. Northville Reg'l. Psychiatric Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002). Indeed, "a plaintiff must plead that each Government-official defendant, through the

8

official's own individual actions, has violated the Constitution, . . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). To the extent that Plaintiffs seek to hold Officer Rochon liable under a *respondeat superior* theory of liability, their claim fails because vicarious liability is not applicable to lawsuits filed under § 1983. *Id.* Moreover, a defendant "will be liable for the unconstitutional acts of [his or] her subordinates only if [he or] she actively participated in the unlawful conduct, such as if [he or] she implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *King v. Zamiara*, 680 F.3d 686, 706 (6th Cir. 2012).

Plaintiffs' have failed to advance any plausible basis in support of Officer Rochon's liability in this matter. First, as Franchelle Adams' affidavit makes clear, "[w]hile arrested inside the house, . . . the police stated that they were *waiting* for their supervisor, who turned out to be Harold Rochon." (Plfs' Resp. Adams Aff. ¶ 10) (emphasis added). In other words, Adams' affidavit establishes that Officer Rochon was not present in the home during the search or arrest. This admission is critical because it establishes that there is no dispute of material fact with respect to Officer Rochon's direct involvement in the underlying arrest. Moreover, even assuming, *arguendo*, that the facts did support a claim for supervisory liability, Plaintiffs have failed to plead such a claim. "The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act." *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Nor do Plaintiffs suggest that Officer Rochon directed or encouraged the other Defendants to use excessive force. *See Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009) ("A supervisor is not liable under § 1983 for failing to train unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it."). In short, Plaintiffs have failed to support the allegation

that Officer Rochon engaged in any unconstitutional behavior. Accordingly, the Court must, and does, GRANT Officer Rochon's motion for summary judgment.

## IV. Conclusion

For the reasons thus stated, the Court GRANTS IN PART Defendants' motion. With the exception of the knock-and-announce violation, Culpepper's unreasonable search and seizure claim is hereby dismissed. In addition, Culpepper's Fifth Amendment claim relating to Defendants' post-arrest conduct is likewise dismissed. Finally, the Court finds that Officer Harold Rochon is entitled to summary judgment.

SO ORDERED.

                        s/Nancy G. Edmunds
                        Nancy G. Edmunds
                        United States District Judge

Dated: October 21, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 21, 2015, by electronic and/or ordinary mail.

                        s/Carol J. Bethel
                        Case Manager